**The relief described hereinbelow is SO ORDERED.**

**SIGNED this 21st day of November, 2011.**



_____
Robert D. Berger
United States Bankruptcy Judge

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

In re:

| | |
|---|---|
| **THOMAS SCOTT JENKINS,** | Case No. 10-22089 |
| Debtor. | Chapter 7 |

**IBD, INC.,**
      **Plaintiff,**

      v.                                      Adv. No. 10-6138

**THOMAS SCOTT JENKINS,**
      **Defendant.**

## MEMORANDUM OPINION AND ORDER
## GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff IBD, Inc., and Defendant/Debtor Thomas Scott Jenkins both seek summary judgment in this proceeding to determine the dischargeability of a debt under 11 U.S.C. §§ 523(a)(4) and (a)(6). Plaintiff's motion is granted. Defendant's motion is denied.

### Findings of Fact

Debtor filed for bankruptcy on June 21, 2010. Prior to filing, Debtor and IBD litigated in

state court over the demise of Debtor's former employer, IBD. IBD successfully sued Debtor for conversion of IBD's property and breach of fiduciary duty. The judgment includes an award for punitive damages. Debtor paid IBD approximately $415,000 after losing a state court appeal. Debtor owed IBD approximately $575,000 as of the petition date.

IBD developed computer software for the agricultural industry. Debtor was IBD's chief executive officer, a shareholder, and a member of the board of directors. IBD provided services to an estimated 40 customers, including customer website hosting.

In 2001, IBD began to experience financial difficulties. Debtor, as IBD's CEO, was charged with finding new investors or purchasers for IBD's assets. However, Debtor and other IBD employees began to discuss forming a new company to serve IBD's customers. Debtor resigned from IBD on September 28, 2001. Debtor did not disclose his plans to form a new company (named EBS) to IBD's remaining board member.

In October 2001, former IBD employees, at Debtor's direction, copied IBD servers and transferred the information to EBS's servers. They then erased IBD's servers. EBS did not pay IBD for the software. EBS informed IBD customers EBS would service their contracts. Some IBD customers opted to terminate their contracts and paid EBS the IBD termination fee. EBS continued to serve most of the customers previously served by IBD. EBS represented to IBD customers EBS was the same company operating under a new name. EBS did not assume or pay any of IBD's debts.

By the time the remaining IBD board member realized Debtor had started EBS, it was too late to salvage IBD's assets for IBD's creditors. IBD filed the state court suit against both Debtor and EBS in 2004 which culminated in a jury trial in 2006. The jury found against EBS

11.11.21 IBD v Jenkins SJ.wpd

and Debtor, jointly and severally, for conversion and awarded IBD $508,288 in damages. The jury also awarded IBD $400,000 in damages against Debtor for breach of fiduciary duty. The jury found punitive damages were appropriate because Debtor acted in a willful, fraudulent, or malicious manner. The trial court awarded IBD $162,623 in punitive damages. The appellate court upheld the judgments.[1]

## Conclusions of Law

This is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. §157(b) and 1334.

### A. Summary Judgment Standard

Summary judgment is appropriate when a moving party illustrates there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. The court should construe all required inferences in favor of the non-moving party. Only when a reasonable person could not differ as to the import of the proffered evidence is summary judgment proper. The moving party carries the burden to establish that he or she is entitled to summary judgment.

### B. Collateral Estoppel

Collateral estoppel applies in §523 actions to determine the dischargeability of a debt.[2] A party is collaterally estopped from relitigating facts which have been comprehensively litigated, finally adjudicated, and resulted in a state court judgment.[3] The law of the state issuing the

---

[1] Under Kansas law, a jury determines entitlement to punitive damages and the trial court determines the amount of punitive damages.
[2] *Grogan v. Garner,* 498 U.S. 279, 284 (1991).
[3] *KPERS v. Reimer & Koger Assocs., Inc.,* 262 Kan. 635, 670 (1997).

judgment applies.[4] Kansas law requires: (1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and judgment, (2) the parties must be the same or in privity therein and (3) the issue litigated must have been determined and necessary to support the judgment.[5]

Debtor argues IBD's statement of uncontroverted facts, which relies on the facts recounted in the Kansas Court of Appeals unpublished opinion, does not comply with D. Kan. LBR 7056.1. The judgment relied on by IBD is final, was affirmed by the Kansas Court of Appeals, and is entitled to full faith and credit.[6] IBD has sufficiently complied with D. Kan. LBR 7056.1.[7] Debtor also argues his fiduciary capacity and his intent have not been previously determined.

### C. Dischargeability under 11 U.S.C. §523

An exception to discharge is narrowly construed with deference given to the fresh-start policy of the Bankruptcy Code.[8] The party opposing a debtor's discharge carries the burden of proof by a preponderance of the evidence.

### D. Fraud or Defalcation While Acting in a Fiduciary Capacity

A claim under §523(a)(4) requires fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. Fiduciary is narrowly defined to except a debt from discharge.[9] The "general definition of fiduciary – a relationship involving confidence, trust and

---

[4] *Marrese v. American Acad. of Orthopaedic Surgeons,* 470 U.S. 373 (1985).
[5] *Williams v. Evans,* 220 Kan. 394, 396 (1976).
[6] 28 U.S.C. §1738.
[7] *McCain Foods USA, Inc., v. Shore (In re Shore),* 305 B.R. 559, 562-63 (Bankr. D. Kan. 2004).
[8] *In re Sweeney*, 341 B.R. 35, 40 (B.A.P. 10th Cir. 2006) (quoting *Bellco First Fed. Credit Union v. Kaspar (In re Kaspar)*, 125 F.3d 1358, 1361 (10th Cir. 1997)).
[9] *Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1371 (10th Cir. 1996).

-4-

11.11.21 IBD v Jenkins SJ.wpd

good faith – is too broad in the dischargeability context."[10] Thus, ordinary commercial relationships such as creditor-debtor or principal-agent do not rise to the level of the fiduciary relationship contemplated by the Bankruptcy Code.[11] Rather, §523(a)(4) requires a preexisting fiduciary relationship between the parties which imposed upon one party responsibility for and control of the other party's assets or property.[12]

The existence of a fiduciary duty for §523(a)(4) is a question of federal law, not a fact to be pled. Outside the corporation-corporate officer context, §523(a)(4) requires an express or technical trust. Most cases cited by Debtor are not corporation-corporate officer cases. Debtor cites a few cases finding a corporate officer or director is not a fiduciary of the corporation.[13] However, these cases are in the minority. The vast majority hold corporate officers and directors are §523(a)(4) fiduciaries of their corporations.[14] The general §523(a)(4) rule requiring an express or technical trust does not apply to corporate officers when the complaining party is the corporation which placed its assets within the officer's responsibility and control.[15]

---

[10] *Arnett, et al., v. Weiner (In re Weiner),* 95 B.R. 204, 206 (Bankr. D. Kan. 1989) (citations omitted).

[11] *In re Young*, 91 F.3d at 1372 (*citing Allen, et al., v. Romero (In re Romero*), 535 F.2d 618, 621 (10th Cir. 1976)). A corporate officer may not be a fiduciary of the corporation's creditors absent a statutory, technical or express trust. *American Metals Corp. v. Cowley (In re Cowley)*, 35 B.R. 526, 529 n.1 (Bankr. D. Kan. 1983) (*citing Davis v. Aetna Acceptance Co.*, 293 U.S. 328 (1934); *In re Romero*, 535 F.2d at 618).

[12] *In re Young,* 91 F.3d at 1371-72.

[13] *In re Hutton,* 117 B.R. 1009 (N.D. Okla. 1990); *Green v. Green (In re Green),* 386 B.R. 865 (Bankr. D.N.M. 2008). Debtor also cites *In re Twitchell,* 91 B.R. 961 (D. Utah 1988). *Twitchell* reversed the bankruptcy court's decision finding the officer acted in a fiduciary capacity. However, the Tenth Circuit reversed the district court and reinstated the bankruptcy decision without an accompanying opinion. *In re Twitchell,* 892 F.2d 86 (10th Cir. 1989).

[14] *In re Johnson,* 242 B.R. 283, 294 (Bankr. E.D. Pa. 1999) (compiling 11 citations so holding with only 2 citations in opposition); *In re Cowley*, 35 B.R. at 528-29 (*citing Pepper v. Litton*, 308 U.S. 295 (1939); *John P. Maguire & Co. v. Herzog*, 421 F.2d 419 (5th Cir.1970); *Lawrence T. Lasagna, Inc., v. Foster*, 609 F.2d 392 (9th Cir. 1979)); *M-R Sullivan Mfg. Co., Inc., v. Sullivan (In re Sullivan),* 217 B.R. 670, 675 (Bankr. D. Mass. 1998); *Miramar Resources, Inc., v. Shultz (In re Shultz),* 205 B.R. 952, 958 (Bankr. D.N.M. 1997) (Delaware law); *In re Cummins,* 166 B.R. 338, 354 (Bankr. W.D. Ark. 1994); *In re Jones,* 445 B.R. 677, 708 (Bankr. N.D. Tex. 2011).

[15] *Redmond v. Karr (In re Karr)*, 442 B.R. 785, 802-03 (Bankr. D. Kan. 2011) (Nevada law) (citations omitted).

While federal law controls, state law is also important to the determination of a fiduciary relationship.[16] Under Kansas law, a corporate officer is a fiduciary of the corporation and its assets.[17]

Debtor moves for judgment arguing a corporate officer cannot be found to act in a fiduciary capacity under §523(a)(4) without an express or technical trust. Debtor's motion is denied because while a corporate officer may not always stand in a fiduciary capacity in relation to a corporate creditor or an individual shareholder, the corporate officer is the steward of the corporation's property and stands in a fiduciary capacity when the corporation itself objects to the officer's mishandling of corporate property. IBD prevails on this issue as a matter of law.

IBD moves for summary judgment based on its state court judgment. Debtor argues the state court breach of fiduciary duty claim is not identical to a §523(a)(4) claim. However, if the state court determined factual issues using §523(a)(4) standards in the course of adjudicating the state-law question, then collateral estoppel bars relitigation of those facts.[18]

The jury issued a general verdict without specific findings of fact. The Kansas Court of Appeals reviewed the trial court record for sufficient evidence to support the jury verdict and found the following. Breach of fiduciary duty is a tort and an injured party may recover such damages as will fairly and justly compensate the party for the injuries sustained as a result of the wrongful act.[19] IBD's conversion and breach of fiduciary duty claims were not based on the same facts and did not constitute double recovery for the same wrong. Under the breach of

---

[16] *In re Karr,* 442 B.R. at 801.

[17] *In re Cowley*, 35 B.R. at 529 (*citing Delano v. Kitch*, 542 F.2d 550 (10th Cir.1976); *Parsons Mobile Products, Inc., v. Remmert*, 216 Kan. 256 (1975); *Newton v. Hornblower*, 224 Kan. 506 (1978)).

[18] *Brown v. Felsen,* 442 U.S. 127, 139 n.10 (1979).

[19] *IBD, Inc., v. Enter. Bus. Solutions, LLC,* 2009 WL 929072, at *9 (Kan. App.) Unpublished disposition.

fiduciary duty claim, the evidence showed Debtor made misrepresentations to IBD's board of directors. EBS generated $100,000 in revenue from IBD's customers during EBS's first three months of operation. EBS's business was virtually indistinguishable from IBD's business for the first year of its existence. Thus, the evidence supported the $400,000 jury award for breach of fiduciary duty. The award represented a year's worth of lost IBD revenue caused by Debtor's misrepresentations and breach of fiduciary duty.[20]

A review of the appellate court decision leaves nothing for this Court to determine under §523(a)(4). The state courts have already determined Debtor's misrepresentations caused IBD's revenues to be misdirected to EBS. Under these facts, misrepresentation is fraud. Debtor stood in a fiduciary capacity with regard to IBD's revenues by virtue of his position of control over IBD's assets. The appellate court found the evidence supported the conclusion Debtor's actions amounted to an intentional tort compensable by an award against him, in his capacity as IBD's fiduciary, in an amount equal to one year of IBD revenues misdirected to EBS. IBD prevails as a matter of law.

### E. Willful and Malicious Injury Caused by Debtor to the Property of Another

In order to establish a debt is nondischargeable under §523(a)(6), a plaintiff must prove debtor intended to cause the injury suffered by the plaintiff through his actions. The willful and malicious standard is stringent, and debts arising from recklessness or negligence fail to qualify for exception. Willful requires a deliberate or intentional injury, not merely a deliberate or intentional act that results in an injury. Malice requires proof the debtor knew or was substantially certain his actions would cause harm to the creditor.[21] Conversion may constitute a

---

[20] *Id.,* at *11.
[21] *In re Pasek,* 983 F.2d 1524, 1527 (10th Cir. 1993); *Kawaauhau v. Geiger,* 523 U.S. 57 (1998).

willful and malicious injury depending upon the circumstances.[22]  "There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without wilfulness or malice."[23]

Debtor argues the state court did not determine his conduct was willful and malicious. Debtor notes the punitive damages jury instruction was written in the disjunctive, allowing the jury to find punitive damages proper if they found Debtor acted either in a willful, fraudulent, or malicious manner.  Regardless, all three standards except a debt from discharge under §523(a).[24]  However, Debtor insists collateral estoppel cannot apply to the § 523(a)(6) claim.

The state courts determined all elements necessary to sustain a §523(a)(6) objection to dischargeability, and there are no undecided factual issues left for this Court.  The state courts found Debtor and EBS converted IBD's cash, customer lists, and software to the exclusion of IBD's rights.[25]  IBD's servers were wiped after the software was transferred to EBS's servers, and the back-up copies were recycled.  Debtor blocked IBD from either selling or using the software, and lured IBD's technical employees to EBS.[26]  Debtor had engaged in deceitful actions to prevent IBD from exercising its rights over the software.[27]  Debtor began converting IBD's assets before IBD finally closed its business.  Neither the jury nor the appellate court found IBD abandoned its assets.  The appellate court's opinion finds substantial evidence from

---

[22] *Davis v. Aetna Acceptance Co.,* 293 U.S. at 330.

[23] *Id.*

[24] Debtor erroneously relies on cases including "reckless" behavior in a disjunctive jury instruction, and reckless and negligent torts may be discharged.  Thus, the argument is that because the bankruptcy court may not be able to determine if the jury found the conduct merely negligent, rather than willful and malicious, the issue is deemed not finally determined.

[25] *IBD, Inc., v. Enter. Bus. Solutions, LLC,* 2009 WL 929072, at *5.

[26] *Id.,* at *6.

[27] *Id.*

the trial court not only to support the $508,288 verdict but also to establish Debtor's intent to cause the harm associated with his actions.

## Conclusion

For these reasons, judgment shall be entered in favor of Plaintiff IBD, Inc., and against Debtor Scott Thomas Jenkins. The debt is not discharged pursuant to 11 U.S.C. §§ 523(a)(4) and (a)(6).

Plaintiff's motion for summary judgment is GRANTED.

Debtor's motion for partial summary judgment is DENIED.

### ###

ROBERT D. BERGER
U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS

11.11.21 IBD v Jenkins SJ.wpd